The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Good morning for this special session. Just one case we're hearing, 19-30247, Tucker v. City of Shreveport. And Ms. Cialino, you are representing appellee, and Ms. Buckle, you are representing appellant. So welcome, and we know there will be a little bit of clinic side, so just keep track of your own time carefully. And with that, Ms. Buckle, you may proceed. Thank you, your honor. May it please the court. I'm here on behalf of the City of Shreveport and the Shreveport police officers, and I understand that jurisdiction on these types of issues is limited to address the legal significance of the facts that were determined by the trial court to address whether the officers are entitled to qualified immunity. But I do believe this specific case is exactly that issue. And that is, I think the issue for this court to recognize is that the district court erred in its analysis of based on the underlying facts. The district court did review the facts in the favor and the light was favorable to the plaintiff. However, the court failed to complete its analysis and failed to review the facts from the perception of a reasonable officer in determining whether those officers are entitled to qualified immunity. In fact, if you review the district court's ruling, you'll see that nowhere in that opinion did the district court analyze the perception of the officers. And that is exactly what's required. This court has said repeatedly that in determining whether an officer is entitled to qualified immunity, the court must look at the facts not as they actually occurred, but as a reasonable officer would perceive those facts. And so I do believe there is a legal issue to be reviewed by this district court erred in its legal analysis. Specifically, I believe the district court looked at the merits of the underlying issues. And prior to the takedown, the district court essentially determined that the use of force was unreasonable and excessive. But again, nowhere did the court perceive the actions of Officer Sisco. Nowhere did the court perceive the actions of Officer McIntyre or Officer Johnson. Ms. Buckle? Yes. Because you didn't file a reply brief, it always helps me to hear how you would address cases that your opposing counsel identified and relied on strongly. And the case that concerns me most, well, there are two. One is our trammel decision. And the other one is Brown versus Lynch. Brown is an unpublished opinion, but it states very clearly with a footnote and extensive support that the law is clearly established that striking a non-resisting suspect is excessive and unreasonable. And therefore, I guess my question to you is, do you accept that as clearly established law? And do you therefore rely on the video as conclusive proof that he was resisting throughout? I do believe that it is clearly established that force against a non-resisting person is excessive. But again, you have to look at whether the officers reasonably perceived his actions as resistance. But what about the trammel case that I just mentioned? Because there, it was even more clear from the video that the person did tense and pull away the arm. And yet our court said that that's a published decision. Our court said that that still goes to the jury as to whether it justified a takedown, an immediate takedown, plus direct strikes to the brief. I did not, Your Honor. And I apologize for not on the reply brief. We were engaged with other divisions of this court, and it was set for oral argument before I had an opportunity. But I do believe both Trammell and Brown are distinguishable. And I would particularly point to Brown in that that case, the court determined there were fact disputes that prevented the court from being able to determine the reasonableness or even the officer's perception because the events did not occur on the video. And there were disputed facts that. Right. But do you think, are you saying the video is conclusive? That is to say it blatantly contradicts his claim that he wasn't resisting. When you look at that video, Deuce, I mean, he's not trying to flee. He doesn't try to hit them. Is it really that he tenses his arm as Mr. McIntyre comes up to him? I believe so, Your Honor. I believe when you look both from the dash cam video from Officer Sisko and the dash cam from Officer McIntyre, that you can see that at least the officers reasonably perceived him to be resisting. And I think the plaintiff, Mr. Tucker, bears the burden in defeating qualified immunity. Maybe be as specific as you can. What was the resistance when he's got his hands, when he's up against the hood? What do you see as resistance in that video? When he's on the, when he's on the hood with Officer Sisko and Officer McIntyre comes up, Officer McIntyre does not immediately resort to the takedown. If you watch the video, there are several seconds where Officer McIntyre simply tries to grab his arm and both officers are attempting to pull Mr. Tucker's arms behind his back. And Mr. Tucker is jerking his head back and forth, looking at the two officers and sort of, if you're looking at him, he lurches, I guess, to his left. And that's when the takedown occurs. And he had already been told to place his hands behind his back. Sorry, go ahead. Well, so that's what I was wanting you to describe, the head jerking, and then he lurches. I mean, I've looked at it by freeze frame, and I would have think the lurch really could have been McIntyre grabbing him because he doesn't know McIntyre is coming up. But Mr. Tucker acknowledges that he had been told to place his hands behind his back, and clearly that was not happening. The officers were having to struggle to place his hands behind his back. So at that point, Mr. Tucker has not complied with verbal commands. And the officers are allowed to use measured and ascending responses. They'd already provided verbal commands at that time. A takedown is a measured and ascending response. And so I do based on how they perceived his- What's different in this case from Trammell then, where we let it go to the jury to decide exactly that? Was the immediate takedown and then direct strikes, was that excessive or was that reasonable for someone who isn't trying to flee, doesn't have a weapon, multiple officers around them? How do you distinguish this case from Trammell? And Your Honor, forgive me if I'm incorrect, but I believe there were additional factual disputes in Trammell that needed to be decided by the jury. It was not a strictly legal question, which I believe is proper in this case because the facts are not disputed. There are different spins on the facts and how they are perceived. But as far as the actual events that occurred, those truly are not in dispute. It's just whether those actions were reasonable and if they were perceived in the same manner. Those are different spins, which is the same as what occurred in Griggs versus Brewer. And that's when this court said, you have to look at it from the perception of a reasonable officer. And the district court did acknowledge in its ruling that in the video, you can see Mr. Tucker's arm straightened, which is consistent with Officer McIntyre's testimony that he believed Mr. Tucker was attempting to pull away. Mr. Tucker was larger than both Officer Sisko and Officer McIntyre. And you have to look at the totality of the circumstances. Mr. Tucker had just led Officer Sisko on a two-minute chase. While it alarms were raised in their minds when he failed to stop despite multiple lighted, empty parking lots. And he drives through a residential neighborhood, which the officers in their experience believed to be a high crime drug area. Officer Sisko reaches the door, smells marijuana, again, consistent with the area that they're located in. I think those facts I have in your record, and I agree they're all pertinent to the totality. What's your best case that it isn't excessive force to stand and kick an unarmed suspect on the ground already surrounded by officers? I do find cases that do allow for distraction blows, these little elbow blows, but I could not find a single case that allowed a police officer to be suspects already on the ground. He's unarmed and he's surrounded. Can you think of any case that says it's not excessive force for one of those officers to start kicking? Your Honor, I don't have a case that's directly on point where there are multiple officers surrounding. But I think when you watch the video, this isn't a situation where Officer McIntyre just, I mean, we've all seen the cases where an officer just runs and kicks the suspect. That's not what was occurring. Officer McIntyre, there's four officers. He's moving around, jumping over the other officers trying to get in and assist. Meanwhile, Mr. Tucker is still kicking. He's still flailing his arms. They're all moving about trying to get any part of his body that they can to secure him and get him under control. Is it Officer McIntyre that is the one who kicks him three or four times? Officer McIntyre did testify that he delivered a knee strike to Mr. Tucker. Well, when you look at it and you've seen the video, it's not a knee strike. It's just a full foot kick. Do you agree with that or not? I do disagree, Your Honor. I think you can see a knee strike and then I think what you're referring to is when Officer McIntyre is moving around and trying to get in and assist. I don't think it was a rare back and intentional kick. I'm trying to hurt this man. I think it was there. He did deliver the knee strike, which he admitted to, and that is an appropriate distractionary technique. Do you think it was just a step forward trying to get into the melee? This all happened in less than 60 seconds. This is exactly the tense, uncertain, rapidly evolving situation that qualified immunity exists in. They all perceive him as resisting. I think that's another place where the district court erred and that the district court found that it was possible that an officer struck Mr. Tucker after he was compliant. But at no time was there a finding that there was any strikes after the officers perceived that he was compliant. When you look at that video, you can hear Mr. Tucker's girlfriend in the background. Stop resisting. Put your hands behind your back. Stop resisting. So this isn't just the officer's perception that he's resisting. This is a citizen standing by that sees him kicking his legs, flailing about, refusing to comply with their commands, that he is not compliant. As you refer to him being compliant, are you referring to the fact that he was being compliant at some point? Are you referring to the time when he was already handcuffed? When you watch the video, you hear them say, put your hands behind your back. Stop resisting. Once they stop giving those commands, you can see the four stops as well. They kind of all step back. So I think it's very obvious that it immediately, once they perceive he's no longer resisting, the four stops. And so that's why I'm saying I believe the district court erred in failing to look at it from the perception of a reasonable officer. Because while they perceived he was actively resisting and perceived that he was potentially a threat, they did use force. It was not excessive force. Even the district court, I mean, it was noticed that it was a limited windup. It was not punches with maximum force. They went from verbal commands to a takedown to hard empty hand techniques, but they did not use a baton. They did not use a flashlight. They did not use mace or a taser and certainly not lethal force. These were very, this was a minor amount of they believe that he is no longer resisting. And I think that's evident from the video because you can see them all sit back and they stop. Was there a question? I'm sorry. No, no, no. You have a little bit of time or you can save it all for rebuttal, whatever you want to do. I would just again, the plaintiff does bear the burden in defeating qualified immunity. And I will point to Mr. Tucker's deposition as far as force being used after he was handcuffed. This testimony is, I don't recall not one time did he say he was struck after he was handcuffed. He was kicked after he was handcuffed. There is no evidence of that whatsoever in the record. And so I don't believe plaintiff can satisfy his burden in that of the officers. Thank you, Ms. Buckle. It's Ms. Singleton. Okay. I thought it might be Ms. Cialino. May it please the court. Good morning, your honors. My name is Ashley Singleton, Price Cialino, Rachel Joken and I are student attorneys with Tulane Law, Civil Rights and Federal Practice Clinic and represent Gregory Tucker. No reasonable officer would slam a person into the pavement when he is compliant. No reasonable officer would kick and punch a person when they're surrounded four to one by officers. And no reasonable officer would continue to kick and punch a person even after they've been restrained. So first I will illustrate how the officer's conduct in slamming Mr. Tucker into the pavement was unreasonable. Next, Mr. Cialino will explain how the officer's conduct after Mr. Tucker was on the ground receiving punch after punch and crying out in pain was also unreasonable. And lastly, Ms. Joken will discuss how this court's precedent clearly established that the officer's conduct in both slamming Mr. Tucker into the pavement and continuing to punch and kick Mr. Tucker even after he was restrained was clearly established and violated his constitutional rights. We respectfully... Before you begin, I think implicit in your division of the argument, I take it you have no objection to dividing the officer's actions up into the time that the vehicle was stopped up to the time of the takedown, number one. Number two, the time from the time of the takedown until the time of the handcuffing. You use the word restraint. Are you equating restraint with handcuffing? Yes, your honor. Yes. And you have no objection to dividing up the officer's actions into the pre-takedown versus the post takedown. Is that correct? You're right, your honor. That's how we have divided the argument today. Okay, but you have no... I understand that and that's helpful. You have no objection to the court considering the use of force in two segments. Is that correct? Correct. Okay. All right. We respectfully request this court to affirm the district court's denial of summary judgment on qualified immunity for these officers because no reasonable officer within a minute and 24 seconds from the time Mr. Tucker voluntarily stopped his car until he was slammed into the pavement that he was an immediate threat or that he was resisting arrest because Mr. Tucker was compliant, he was unarmed, his hands remained visible, and he was outnumbered three to one by including voluntarily stopping his vehicle, stepping out of his vehicle, being subject to one pat down, moving to the officer's cruiser, being subject to yet another pat down, and even being in a place in his hands behind his back. Mr. Sisco testified himself in the mere seconds before the officer slammed him into the pavement that he was, quote, in the process, unquote, of placing his hands behind his back, which the district court correctly determined based on the video footage that Mr. Tucker was complying with Officer Sisco's orders. Doesn't your argument entirely depend on there being a question of fact as to compliance? In other words, if the video is conclusive that he was resisting, then cases like Gregg's and Poole would apply, justifying a non-deadly force. Do you agree that your argument turns on us accepting that there's an issue of fact, and I know the district court did, as to whether he was compliant or whether he was resisting? Well, your honor, like you said, district court did determine that Mr. Tucker was compliant. And the video, you know, here, the video supports that, as well as we're accepting, unless the video blatantly contradicts what is being said, we take that as factual as well. But in the slam to the pavement, he was compliant there. And so in either section, whether it's the being slammed to the pavement or after he was already in the pavement, qualified immunity doesn't apply. Right. Okay. But I think then the answer is yes. If he was resisting, it wouldn't be unreasonable for an officer to put him prone on the ground quickly. In other words, if he were resisting, standing up right next to the officer, the cuffs going on, you wouldn't argue that clearly established law disallows that officer from pulling him to the ground. It turns on whether he was resisting or not, doesn't it? Well, I think that there are cases that this court has held that even some minor, like pushing away or verbally saying no, there have been several other cases that there have been some sort of resistance and they still have found that the level of force that was used was unreasonable. That's a little bit of an uncertainty in our law. That's the passive resistance cases. But I didn't think you were relying on that because I thought you were agreeing with the district court that there isn't evidence that he resisted at all. Right. There is no, we agree with the district court's findings and understand that at this period, this point that we are now, we are relying and accepting those factual findings that he was compliant and that because of that compliance, that no reasonable officer would use. What about the fact it's sort of undeniable that verbally, even if he wasn't aggressive or threatening them, he was using a lot of profanity and it was midnight and he had driven away from them. What about all that to justify sort of heightened anxiety that meant they just wanted him on the ground? Well, your honor, the video shows and as the district court acknowledged that Mr. Tucker was verbally expressing that he was upset and complaining about the situation, but this court has held that an officer can't abruptly resort to some overwhelming physical force rather than continuing to verbally negotiate with an individual, especially if that individual is at most giving passive resistance, who will stop for a minor violation. I'm just trying to be fair to opposing counsel. You see your time's up. It's hard to divide time ways and I know as students, we'd love to hear more, but I need to be fair to opposing counsel and hear from your colleague. Understood. Thank you, your honor. We can hear you if you go ahead and start. All right. May it please the court. Once Mr. Tucker was on the ground, the four defendant officers surrounded Mr. Tucker and continued to beat him for over a minute while he cried out in pain. No reasonable officer would believe that this use of force was reasonable because he was faced down on the ground, unarmed, surrounded by four officers, and he was not kicking or around on the ground. And even though he was on his stomach, he was kicking. I mean, it seems like the officers could have thought, hey, he's trying to kick me. The district court found that he was not kicking at the officers. Instead, he was not kicking at the officers. Instead, those leg movements, like an involuntary response to what was happening to him. And the district court also found that he could have been kicked or punched after he was handcuffed and subdued, which this court has held is an unreasonable use of force. When Mr. Tucker was on the ground, unarmed. Wait a minute. He testified, plaintiff testified that that didn't happen after he was handcuffed. Is that correct? He testified that he could not recall whether that happened. The district court found that he, a reasonable jury, looking at the video, could find that he was kicked after he was handcuffed and that in the district court even inferred that he was struck at least once after he was complying with orders. When Mr. Tucker was on the ground, Mr. Sisco admits that he hit Mr. Tucker multiple times in the shoulder and rib cage and hit him at least twice in the face. Mr. Celino, in your complaint, did you plead that he was beaten after he was handcuffed? Um, the district court inferred that he was. I'm asking whether you pled that. Um, yes. Yes. And he was in the district court found that he was. Okay. When you say yes, you know, and maybe on rebuttal, no, there won't be rebuttal. Maybe the third attorney can give us the paragraph in the complaint that makes that assertion. Because you're right. The district court did describe it as you've said, but I just wanted to be certain that that was part of your case. Yes. Okay. Um, when Mr. when he was on the ground, Mr. McIntyre admits that he hit Mr. Tucker in the face, struck him with his knee and hit him in the back and shoulder blade. Mr. Johnson does not admit to hitting Mr. Tucker, but the district court found that video footage clearly shows that he hit him at least once. And the video footage also shows that Mr. Cole hit him at least once. No reasonable officer could find that Mr. Tucker posed an immediate threat because he was face down with his stomach on the ground, unarmed, surrounded by four police officers, and he was not kicking or punching at the officers. How do you distinguish the Griggs case specifically that did allow for qualified immunity when non-deadly force was used against the person struggling on the ground? In Griggs, the suspect was up off the ground. She was handcuffed and he was put in the back of the police car. When he was in there, he kicked the officer right in the chest, which Mr. Tucker did nothing similar to that. Mr. Tucker was on the ground, moving his legs. When he was, we do not know when he was handcuffed, and we cannot tell if he was, and the district court found that he could have been kicked once he was handcuffed, and he was not moving his legs and he was on the ground the entire time. The district court found that he could have been kicked in one of those after he was handcuffed, and if even one of those kicks landed when he was handcuffed and subdued, that would be an unreasonable use of force. In Ramirez v. Martinez, the court also held that a reasonable officer could not have concluded that a suspect posed an immediate threat when he was on the ground in handcuffs and found that strikes after he was handcuffed were unreasonable. Why in the complaint that paragraph 19 says, and I'll read it to you, after being handcuffed and beaten, Plaintiff Tucker was lifted off the pavement by the police officers and placed into the back of Defendant Sisco's vehicle. A dash cam video of Plaintiff Tucker at this time shows obvious bleeding and injuries to the face and head of Tucker. That's the only reference in the complaint to anything involving post-handcuff conduct. Yes, your honor, after being handcuffed and beaten, that implies that when he was handcuffed, he was being, and if even one of those strikes hit after he was handcuffed and beaten and handcuffed, which the district court found that a jury could see from the video, could infer that he was handcuffed after, he was beaten after he was handcuffed, which is an unreasonable use of force. What about, could we, looking at the gram factors, does the, how do you, how do you factor in that this man had essentially fled from police during the miles that he kept driving? Mr. Tucker did not flee from police, and especially when he was on the ground when the district court said that his movements could not have been seen as white because he was surrounded by officers on the ground. And because there are so many genuine disputes of material fact, we respectfully request, I see that I'm out of time, may I finish my conclusion? Yes. We respectfully request that this court deny the defendant's motion for summary judgment Ms. Jokinen will now discuss why defendant officers' use of force violate a clearly established law. Go ahead counsel, your time's beginning. Thank you, your honor. May it please the court, this honorable court has clearly established that it is a constitutional violation to strike a non-resisting party while they are, while they are not resisting and while they are on the ground. This court ruled in 2013 in Ramirez versus Martinez that it was a constitutional violation for officers to immediately throw someone to the ground even when that suspect had refused to put his hands behind his back when that was requested of him and had in fact pulled his arm entirely out of the grasp of the officers. In this case, in this case, this court stated that any reasonable officer would have found it objectively unreasonable to force Ramirez to the ground when the only resistance he offered was pulling his arm away. And in the district court's ruling, Judge Foote inferred that prior to being taken to the ground, Tucker complied with the officer's orders to place his hands behind his back. So it follows then that if no reasonable officer would find it necessary to use that sort of heightened force on an arrestee that pulled away entirely, that it was objectively unreasonable for the officers in this case to force Mr. Tucker to the ground when he followed their instructions to place his hands behind his back. As we've mentioned, the district court also found that Mr. Tucker was struck on the ground after becoming compliant. And in 2013, this court reversed the granting of summary judgment on qualified immunity in Brown versus Lynch, holding that the law was clearly established in this circuit that repeatedly striking a non-resisting suspect is excessive and unreasonable force. Like Mr. Tucker, the plaintiff in Brown was lying on his belly on the ground and he was also moving while being struck by the officers. And this court stated that a reasonable jury could find that he was not resisting. In 2014, in Holmes versus Oakland, this court affirmed a denial of summary judgment, holding that police officers violated clearly established law when they punched a suspect who was on the ground but was still resisting being handled. And this court's reason that officers should have known that they could not use increasingly hard force when Chacon was not kicking back at officers or attacking them in any way. In the district court- I'm sure you've looked at all the videos from the different angles. Is your position that the videos do establish that he was passively resisting and you therefore rely on that line of authority or do you contend that it's a question of fact whether he was resisting at all? I contend that it is a question of fact whether he was resisting at all. In the district court held that he was not or was on the ground not resisting at a certain point. If there was resistance, it was slight leg movements, the kicks that we discussed. But like my colleague said, Judge Foote inferred that while Mr. Tucker was moving his legs, he was never attempting to actually kick the officers. Judge Foote also found that one of the blows could have been delivered after he was handcuffed. And this court clearly established that it is a constitutional violation to strike a suspect who is subdued and restrained. In 2008, this court denied qualified immunity to the officer in push versus strain, holding that the officer should have known that he could not continue strike push after she was handcuffed and no longer resisting. Therefore, the officers in this case known that continuing to strike Mr. Tucker after he was handcuffed violated his rights. Each of these authorities that I've cited existed prior to December 1st, 2016, holding the officers on notice and giving them fair warning that their use of increasingly harsh force on a person who was not resisting is excessive and unreasonable in light of clearly established law. The takedown and every punch, kick, knee strike to Mr. Tucker was a new decision by the officers to enforce. And because the district court found that Mr. Tucker was compliant in his interaction with the defendants, the officers should have known that they could not throw him face down on the concrete and beat him for over a minute surrounding him. No questions about the record. Do you think there is any doubt that the kicks that appear were full body kicks from a standing police officer? Or do you think the record is open that they were just jumping around him and those were not kicks that were hitting him? The district court found that he was kicked by the officer. A standing officer kicking him? Yes. Okay. And the other question is opposing counsel emphasized that a witness, maybe his girlfriend, confirmed, a neutral witness confirmed that he was resisting. Does the audio of these dash cams confirm that someone other than the police officer is saying stop resisting? Well, I'll reiterate that the district court found that he was compliant, viewing all of the evidence. I do know that that's right. But I'm just asking you, do you agree that the audio has a non-police officer voice? I'm not saying that I've concluded that. I'm asking your opinion that indicates he was resisting on the ground. Your Honor, I would say that that is a question of fact best put to a jury. And I see that I'm running low on time now. So I will just reiterate that we respectfully request that this court affirm the district court's denial of summary judgment. Thank you. Ms. Buckle, rebuttal? Yes, Your Honor. And I would like to go back and answer your question earlier and distinguish Trammell. And I do believe the facts of this case fall squarely in line with the Griggs authority versus the Trammell authority. In Trammell, it was very clear that the suspect was compliant. Unlike Trammell, Mr. Tucker led officers on a two-minute chase, essentially. Mr. Trammell was stopped. He exited the vehicle. He was not verbally aggressive. But if that's the distinguishing point, do we have to just say that the district judge committed clear error saying that whether he was compliant or not is an open question looking at the video? Do we have to say this video conclusively or blatantly rebutts whatever the expression is? I don't believe you have to say that, Your Honor. But I think the error from the district court is that the district court did not complete the analysis. The district court failed to look at the facts from the perception of a reasonable officer. The district court simply failed to do that. In Trammell, this court found that there weren't facts sufficient from which a reasonable officer would perceive that he was resisting. And that was the distinguishing factor. Here, just like in Griggs, there were actions by the suspect, Mr. Tucker, that the officers could reasonably perceive as resistance. And counsel for Mr. Tucker has said that there is a genuine issue of fact as to whether Mr. Tucker was resisting. But respectfully, that's not the issue. That's not the inquiry for this court. I thought in Trammell, the majority writes, just as in Goodson, it appears that Trammell's physical resistance prior to being And that seems like exactly you said it was the head jerk and the arm pulling. How was that in any way different? Because you have to look at the totality of the circumstances. Trammell had not led officers on a two-minute chase. He was not verbally aggressive. He was not banging his hands on the hood of the vehicle and cursing at the officers. It was a very calm situation that had not evolved as quickly as the situation with Mr. Tucker. When the officers arrived with Mr. Tucker, they were already on a very high alert. He was verbally aggressive. He was slamming his hands down on the hood. And those are important facts as to whether the officers believed that additional force was necessary. I thought our case law was pretty clear that for verbal anger to qualify, it's got to be a threat. It has to be putting someone in danger. It can't just be that the citizen thinks, why in the world are you chasing me at midnight? Because of a brake light. If that's not enhancing the gram factor danger, that's just a person really upset that they're being arrested for a brake light. Correct. But your honor, officer Sisco had not completed the pat down. They did not know if he was still armed. He was very tense. And all of the officers, even officer Johnson, who was a rookie at the time, testified how surprised he was at the reaction from Mr. Tucker, because there were now three officers present and his reaction was not to comply. It was to tense up and to pull away. And so for the officers, this court has said that for officer safety, they can detain and whether that's on the ground or standing up for officer safety, they can detain the suspect. And that's what the officers were attempting to do. And it was a measured and ascending response. And also a suspicion that he had been using marijuana. So perhaps he was stoned, just why he was acting so maniacal that there was no marijuana found. But certainly all the There was never a blood test to confirm, but certainly all of the officers suspected that use. Again, the issue contrary to what plaintiff's counsel said, the issue is not whether Mr. Tucker was resisting. As this court said in Griggs, even though reasonable jury might find that he was actually resisting, that is not the proper inquiry. The proper inquiry is whether the And so I see that my time is up. I respectfully request that this honorable court reverse the decision of the district court and enter a judgment granting the motion for summary judgment in this matter, finding that all of the officers are entitled to qualified immunity. Thank you, Ms. Buckle. Thank you both, especially the clinic. Well, also just as especially you, Ms. Buckle, but it's nice to hear from students. We appreciate the effort in this case is submitted. Thank you.